# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| PATIENCE M. UNDERWOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-3270-CV-S-NKL-SSA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security Administration | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court is Plaintiff Patience M. Underwood's ("Underwood") Motion for Summary Judgment [Doc. # 7]. Underwood seeks judicial review of the Commissioner's denial of her requests for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401, et seq., and supplemental security income (SSI) benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq. The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary. Because the Court finds that the Administrative Law Judge failed to consider the severe impairments to Underwood's cervical, thoracic, and lumbar spine, the Court remands the case to the ALJ for further consideration.

**I.  Factual Background**

Underwood saw Dennis Robinson, D.O., on March 8, 2002 for complaints of back and neck ache. Robinson found that her neck was tender to rotation and stiff, but was

1

able to flex and extend normally. He also noted that she had cervical pain, decreased range of motion, and "somatic dysfunction." The doctor found pain and tenderness in the thoracic area and lumbar spine with decreased range of motion. (Tr. 230)

Underwood returned to Dr. Robinson twice in March for headaches and again on June 24, 2002 for back and neck pain and to discuss the fact that she was pregnant. Dr. Robinson noted that she appeared to be in pain and uncomfortable and that she had pain and tenderness in her thoracic spine. He again noted cervical pain, decreased range of motion and "somatic dysfunction." (Tr. 225) She returned with complaints of neck and back pain again on September 11, 2002. Dr. Robinson made substantially the same notes as on her previous visit, noting also that she was now four months pregnant. (Tr. 226)

After intermittent appointments for headaches, Underwood saw Dr. Robinson again for back and neck pain on July 2003. He noted tenderness in the cervical area with decreased range of motion and an upper thoracic area that was tender to palpation. He performed osteopathic manipulation including soft tissue and muscle energy HVL technique and recommended hot and ice packs. (Tr. 219-220)

Underwood went to the emergency room on December 8, 2003, after a car accident. She complained of neck and back pain, though X-rays of her thoracic and cervical spine were unremarkable. She was diagnosed with cervical/thoracic strain, prescribed Naprosyn, and told to apply heat and ice. (Tr. 185-97) She returned to Robinson on December 16, 2003 with neck and back pain. The doctor made substantially the same diagnosis, noting muscle spasms in addition to the earlier symptoms. He treated

her again with osteopathic manipulation and prescribed amoxil. (Tr. 214-15)

Underwood returned to Robinson on September 20, 2004 for neck and back pain and reported difficulty sleeping. Robinson diagnosed low back pain, performed osteopathic manipulation, and prescribed Darvocet, Flexeril and Vistaril. (Tr. 269) Underwood saw Dr. Robinson for neck and back pain again on November 15, 2004. He noted that her cervical area was tender, she had a decreased range of motion, and that her upper thoracic area was tender to palpation. He also noted muscle spasms and tenderness in the right and left S1 joint. (Tr. 268)

At the hearing on her disability claims, Underwood testified that she has spinal pain most of the time between her shoulder blades and in her lower back. (Tr. 391) She stated that she had muscle spasms or cramps in her back, legs, and neck and that moving her arms made the pain worse.

II.  **ALJ's Findings**

Following the hearing, the ALJ issued a written opinion denying benefits in which she found that Underwood had the following severe impairments:

> The medical evidence establishes that the claimant has obesity, status-post two cesarean section deliveries, bilateral carpal tunnel syndrome with status-post right carpal tunnel release, status-post cholecystectomy, probable tension headaches, and recurrent mild anxiety and/or depression, but no impairment or combination of impairments that meets or equals in severity the requirements of any impairment listed in Appendix 1, Subpart P, Regulations No. 4.

(Tr. 24) Despite the multiple instances of treatment by Dr. Robinson, the ALJ did not find Underwood's neck and back pain to be "severe" within the meaning of the Social

3

Security regulations. On the contrary, she found that "On March 16, 2004, [Dr. Robinson] said that the claimant's alleged neck pain was a 'somatic dysfunction,' a polite way of saying that it did not have much in the way of organic medical foundation." (Tr. 22)

As Underwood notes in her brief, and as the Commissioner concedes in his, the word "somatic dysfunction" as used by a Doctor of Osteopathy ("D.O.") does not have the same connotation as if used by a Medical Doctor ("M.D."). Rather than being "a polite way of saying that [a symptom] d[oes] not have much in the way of organic medical foundation," as interpreted by the ALJ, "somatic dysfunction" actually means an impairment of the musculoskelatal system.[1]

The ALJ failed to consider Underwood's back and neck pain a severe impairment at step two of her evaluation due to her misinterpretation of Dr. Robinson's treatment notes. For an impairment not to be considered "severe" within the meaning of the Social Security regulations, it can have "no more than minimal effect on claimant's ability to work." *See Garza v. Barnhart*, 397 F.3d 1087, 1089 (8th Cir. 2005). Rather than

---

[1] *See* COUNCIL OF OSTEOPATHIC PRINCIPLES OF THE AMERICAN ASSOCIATION OF COLLEGES OF OSTEOPATHIC MEDICINE – GLOSSARY OF OSTEOPATHIC TERMINOLOGY (Revised April, 2002) at 1249 ("Somatic Dysfunction: Impaired or altered function of related components of the somatic (body framework) system: skeletal, arthrodial, and myofascial structures, and related vascular, lymphatic, and neural elements. Somatic dysfunction is treatable using osteopathic manipulative treatment. The positional and motion aspects of somatic dysfunction are best described using at least one of three parameters: (a) the position of a body part as determined by palpation and referenced to its adjacent defined structure; (b) the directions in which motion is freer; and (c) the directions in which motion is restricted.").

4

considering whether Underwood's back and neck pain, either separately or in combination with any of her other severe impairments, precluded all employment, the ALJ ignored her back and neck pain altogether. *See Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990) (an ALJ must not substitute his opinions for those of the physician). Since the threshold for determining whether an impairment is severe at step two of the ALJ's evaluation is so low, and since the ALJ misinterpreted the medical evidence in evaluating whether Undewood's neck and back pain constituted a severe impairment, the Court is unable to determine whether the ALJ's determination as a whole is supported by substantial evidence. Consequently, the Court concludes that remand for further consideration by the ALJ is warranted under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should properly consider Dr. Robinson's treatment notes regarding Underwood's back and neck pain in evaluating whether her pain, either separately or in conjunction with the other severe impairments found by the ALJ in her earlier opinion, precludes Underwood from all employment.

## III.     Conclusion

Accordingly, it is hereby

ORDERED that Underwood's Motion for Summary Judgment [Doc. # 7] is GRANTED IN PART. The decision of the ALJ is REVERSED and the case is REMANDED for further consideration consistent with this ORDER

s/ NANETTE K. LAUGHREY
NANETTE K. LAUGHREY
United States District Judge

Dated:  April 23, 2007
Jefferson City, Missouri

6